IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Ana R. Olivella Rivera<br>    **PLAINTIFF**<br>              Vs.<br><br>Popular Leasing and Rental, Inc., and others.<br>    **DEFENDANTS** | **Civil No. 98-2267**<br><br>**CREDIT COLLECTION DAMAGES** |

## STATEMENT OF UNCONTESTED AND CONTESTED FACTS

TO THE HONORABLE COURT:

COMES NOW Plaintiffs through the undersigned, attorneys and respectfully submit there reply and opposition to Defendant's Summary Judgment; also submitted is Plaintiffs Statements of Uncontested and Contested Facts:

### UNCONTESTED FACTS

1. Plaintiff Ana Rosa Olivella, lives in San Juan, Puerto Rico and has worked as a career placement job officer with various employers. **(See enclosed job certificate Exhibit J).**

2. At the moment of the purchase of a Nissan Stanza GL, Model year 1992, Mrs. Ana Rosa Olivella worked with All in the One Human Resources

Services, Inc., in Santurce, Puerto Rico. She worked as executive vice-president and general manager in said corporation.

3.  On early 1992, Plaintiff purchased a brand new Nissan Stanza, 1992, with Medina Auto, Caguas, Puerto Rico at a discounted price for Popular Leasing was commencing its business. **(See Exhibit A).**

4.  The vehicle was financed through a lease agreement with Popular Lease and Rental (now Popular Auto). **(See lease agreement- Exhibit A).**

5.  The purchased vehicle primary use was personal use. On daily basis she use the vehicle to transport herself from her home to her office and back and forth. Moreover, with the vehicle she also visited her parents, brother and sister; also she went shopping, visits her doctors, banking institutions, social events. The vehicle was used more than sixty percent of the time for personal activities this was told to the vendor at Popular Leasing Rental.

6.  Also, Mrs. Ana Rosa Olivella used said vehicle to visit numerous clients throughout Puerto Rico, file all the employment paperwork at numerous state and federal agencies within Puerto Rico; and attend all the required meeting, conferences and seminars with different state, local and federal officials as well as bankers and finance offices**. (See Sworn Statement, Exhibit K).**

7.  The business use of the Nissan Stanza by Ana Rosa Olivella was on occasional basis**. (See Sworn Statement**- **Exhibit K).**

8.     Thereafter, when Ana Rosa Olivella left All in One Human Resources Services, Inc., she was hired by Mr. Jerry D Moss, President of Career Contract Services, Inc., to also act as General Manager in recruiting services and general administrative work.

9.     As part of her job assignments, Plaintiff Ana Rosa Olivella had to travel to Mayaguez, Aguadilla, Arecibo, Ponce, Bayamón and cities in Puerto Rico, performing the followings:

  a)     Offer recruiting services to different employers.

  b)     On site coordinate for various manufacturing plants such as Digital Switch Corporation, Sensor Matic, Hewlett Packard, Checkpoint Systems in Ponce, Baxter Cardiovascular Growing among other.

  c)     Visit the offices U.S. Treasury Department of Puerto Rico, the Commonwealth of Puerto Rico's Treasury Department, Labor Departments at both level and other agencies in Puerto Rico.

  d)     Coordinate and prepare all payroll and billing activities with clients which required visit to numerous banking and financial institutions. As previously stated these activities were not on a daily basis. **(See Sworn Statements-Exhibit K).**

10.     At the time of the purchase, Popular Leasing and Rental, Inc., required a full cover insurance policy to Ana Rosa Olivella.

11. To comply with said requirement, Mrs. Ana Rosa Olivella purchased a full cover insurance policy from Triple SSS on 1993 to 1995, not withstanding that full cover insurance policy had been incorporated in the lease contract. Therefore, for almost two (2) years Mrs. Ana R. Olivella was paying two insurance policies. **(See Exhibit G & H).**

12. When the lease contract, was drawn, Mrs. Olivella told Popular Leasing and Rental, that the intended use specifically for her personal needs and as a second purpose her employor's business activities the had note objection.

13. Moreover, the contract was presented to Mrs. Olivella in a pre-printed form and she was told to signed without any amendments. She was told to signed as it was drawn. Mrs. Olivella had no choice in the matter.

14. At the time of the lease contract Mrs. Olivella had an excellent credit rating and the lease loan was immediately approve. Her father at the time was a Chase Manhattan Bank executive officer.

## CONTESTED FACTS

**Plaintiff submit the following contested facts:**

1. Defendants illegally collected in various occasions, through its directors officers, agents and employees, fictitious charges made against Plaintiff's loan balance at Popular Leasing and Rental. These charges include

double payment of insurance premiums, payment of undue principal and interest and other charges. These negligent wrong doing were performed in a continuous basis from 1996 up to May, 1998, while the contract was alive; and later on or late 1998 and 1999 when the contract terminated. **See Sworn Statement Exhibit K.**

2. The first collection procedure involved the double payment of an insurance policy; whereby plaintiff was forced to pay not only Popular Leasing Rental insurer namely Puerto Rican American Insurance; but her own insurer namely Seguros de Vida Triple-S, Inc. **(See exhibit G & H).**

3. Thereafter, on May 1996, Defendant Popular Leasing and Rental through its fiscal agent Banco Popular of Puerto Rico and debt collector Tomás Aponte, commenced collecting the alleged defaulted loan. At this time Plaintiff did not pay the loan for she had a credit in her favor or more than $2,000 of insurance premium. However, Popular Leasing and Rental did not agree to honor the same. At this time, her vehicle was reposed. But after various negotiations with Popular Leasing and Rental, the same was return and a credit for payment of double insurance premium was granted by Popular Leasing and Rental. **(See Exhibit E & F).**

4. Notwithstanding this settlement, on early October 1997, Ana Rosa Olivella received a call from Sylvia Cardona, officer of Popular Leasing and

Rental, regarding another alleged default. Prior to this call a collection letter send by Sergio Dominguez Wolf on September 1997. **Exhibit L.** After a serious conference with said officer, Popular Leasing and Rental and/or Banco Popular of Puerto Rico remitted in November 7, 1997, a letter of apology acknowledging their collection error. Also, Mrs. Cardona promised to Ana Rosa Olivella that said situation will be resolved with the pertinent credit agency. (**See letter marked as Exhibit B).**

    5.    After said letter, on or around February, 1998 and for the third time, Popular Leasing and Rental again proceeded to collect an alleged default on the referred loan. To Mrs. Ana Rosa Olivella's disbelief and anger again Popular Leasing and Rental was in error in its collection. Mrs. Ana Rosa Olivella this time was called by the deceased Miguel Guindín, and other employees who stated her she was on default owing more than $11,000. At this time, two letters was remitted by Popular Leasing and Rental to Ana Rosa Olivella, which were both incorrect and extremely enormous. (**Exhibit G and H).**

    6.    At this time Ana Rosa Olivella became extremely anxious, frustrated, frivols and depressed. She could not sleep, coordinate her ideas, became paranoid and/or suspicious, and saw the encounter situation as a pay back by Banco Popular of Puerto Rico and/or Popular Leasing and Rental against her. **(See Sworn Statement- Exhibit K).**

7. Around May, 1998 and after numerous meeting and/or conference, Popular Leasing and Rental admitted their errors which was again committed. Thereafter, all fictitious charges were dropped; and she only paid for the residual value of the vehicle in question. (**Exhibit E).** A stipulation was entered between the parties whereby all fictitious charges were finally eliminated; and Ana Rosa Olivella purchase the residual value of the Nissan Stanza. The title of said vehicle was later transferred but the bad credit problem continued for Ana Rosa Olivella. Mr. Guindin also promised to honor the November 7, 1997, letter and its commitment to clear Mrs. Olivella adverse credit rating a title transfer was made on October 2, 1998. **Exhibit E.**

8. Two (2) weeks after the stipulation between Popular Leasing and Rental and Ana Rosa Olivella, the Plaintiff received a telephone call from a person identified as Mr. Tomás Aponte of Isla Repossession, Inc., whereby he stated that Ana Rosa Olivella was in default and he was instructed to again collect the alleged defaulted loan and/or reposed the Nissan Stanza. She felt at this time very angry and frustrated. A loan balance statement was also notified. **(See Sworn Statement- Exhibit K and also Exhibit L, M & N).**

9. In reply, Mrs. Ana Rosa Olivella indicated to said person that a stipulation had occurred between Popular Leasing and Rental and Ana Rosa Olivella, whereby the matter had been settled for all legal purposes.

10. Notwithstanding, said agreement between Popular Leasing and Rental and Ana Rosa Olivella, the credit report information was never duly corrected by either Popular Leasing and Rental and/or Banco Popular of Puerto Rico. Both Defendants never informed nor corrected said credit problem to the credit collection agencies in Puerto Rico. Mrs. Ana Rosa Olivella financial credit report nor never requested to the credit rating agency in Puerto Rico to change their negative credit rating. Neither Mr. Guindin (who later died) nor Mrs. Carmona ever informed to the credit reporting agencies the fact that Mrs. Ana Rosa Olivella was indeed the victim of various a very serious errors committed by Popular Leasing and Rental, its director officers, agents and employees in relation to loan repayments and charges. Mrs. Ana Rosa Olivella informed both Banco Popular of Puerto Rico and Popular Leasing and Rental that she had made contact with the credit bureau prior to November 7, 1997, when Mrs. Carmona letter was notified. **See Exhibit O, P & Q.**

11. Mrs. Ana Rosa Olivella suffered for almost ten (10) years of a negative credit rating in relation to said illegal collection practices and/or reporting by Popular Leasing and Rental and/or Banco Popular of Puerto Rico. She could not obtain personal credit from numerous back and/or financial institution nor obtain business loans to either start he business of expand the same. Ana Rosa Olivella's financial situation was severely strained for lack of

credit and/or borrowing capacity. This is particularly relevant due to the nature of her work when she became first a sole proprietor and later as the sole owner of a corporate entity.

**RESPECTFULLY SUBMITTED.**

I CERTIFY that on this same date I have filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Attorney Ana María Otero and Attorney David López Pumarejo, at P.O. Box 195351, San Juan, PR 00919-5351 by regular mail.

In Caguas, Puerto Rico, this March 29, 2006.

/RAFAEL A. OLIVERAS LOPEZ DE VICTORIA
**RAFAEL A. OLIVERAS LOPEZ DE VICTORIA**
USDC: 119606
4G9, CALLE 2, 4TA. SECCION
URB. VILLA DEL REY
CAGUAS, PR 00727-6704
TEL: 744-8588/ FAX: 703-0977
Email: roliveralv@prtc.net