

Exhibit A

**POPULAR LEASING**
Leasing & Rental

LEASE AGREEMENT

LEASE_A

Lease Number __7686__

THIS AGREEMENT (hereafter, the "Lease") is made this __25__ day of __September__, __92__ between Popular Leasing & Rental Inc., a Puerto Rican corporation with its principal office at M-1046 Federico Costa Street, No.1, Tres Monjitas Industrial Park, Hato Rey, P.R. 00918 (hereafter, the "Lessor") and __ANA R OLIVELLA RIVERA__

__3-N-21 CALLE LOTO URB. LOMAS VERDES BAYAMON, PR 00956__ with

its principal office or address at __SAME__ (hereafter, the "Lessee").

### TERMS AND CONDITIONS OF LEASE

(1) **LEASE:** Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, each unit of equipment (hereafter, "Unit") described in an Equipment Schedule or Schedules (hereafter, "Schedule") executed and delivered by the parties concurrently with this Lease or subsequent thereto, which Schedules, when duly executed, shall become a part of, and subject to, this Lease. The terms and conditions contained herein (including the Supplements, if any, annexed hereto) and in said Schedule(s), shall govern the leasing and use of all units.

(2) **TERM OF LEASE AND DELIVERY:**
  (a) The "Commencement Date" means, as to each Unit designated on any Schedule, the date each such Unit is delivered and accepted by Lessee.
  (b) The "Expiration Date" means, as to each Unit designated on any Schedule, the date, subject to the provisions of Paragraph 17 hereof, such Unit is sold pursuant to Paragraph 10 (open-end) or returned, pursuant to Paragraph 11 (closed-end).
  (c) The term of this Lease (hereafter, the "Term") respecting each Unit, will be the number of months specified in the applicable Schedule under "Minimum Lease Term". Lessor will not be held liable for any failure or delay in obtaining or delivering any such Unit, or for damages of any kind or loss of business brought about by the interruption in the use of any Unit. In consideration of the monthly rental charge and during the term of the Lease, Lessee agrees to hold, and will in effect hold Lessor harmless from damages of any kind brought about by an interruption in the use of any Unit. Lessor shall proceed to notify Lessee when each such Unit is ready for service. Upon receiving such notification, Lessee will accept delivery of each Unit and Lessor will be authorized to complete the corresponding Schedule by placing therein the Unit's serial number and date in service.

(3) **RENTAL CHARGE:** (a) As to all Units, the monthly rental charge payable by Lessee to Lessor without further notice, demand, abatement, reduction, set-off or counter-claim, is as indicated in the applicable Schedule. Rental shall begin on the Commencement Date and shall be due and payable by Lessee in advance on the first day of each month. The Commencement or Expiration Date, as the case may be, for any Unit leased, returned (closed-end) or sold (open-end) after the fifteenth (15th) day of any month, will be understood to be the first (1st) day of the following month, and for any Unit leased, returned (closed-end) or sold (open-end) on or before the fifteenth (15th) day of any month, the Commencement or Expiration Date, as the case may be, will be understood to be the first (1st) day of such month. Lessee's monthly charges, whenever he, she or it has been issued a coupon payment book, will appear on said coupons, subject to any adjustment that may be provided in this Lease. Lessor will issue an invoice on the first day of each month which together with the corresponding coupon will both be due and payable by Lessee by the tenth day of each calendar month. Irrespective of the order in which any amounts under this Lease are incurred or payable, Lessor may apply any amount paid by Lessee against any amount which might be due under the Lease. All charges contained in each Schedule are based on Lessor's projected purchase cost for the Unit and the cost of money when the Schedule is executed. Should these factors change when the Unit is placed in service, Lessor will proceed to adjust the monthly rental charge, monthly depreciation credit and corresponding interest rate.
  (b) All monthly rental charges including any other sum due and payable under this Lease will be paid to Lessor at its address indicated above, or as otherwise directed by Lessor in writing.

(4) **SECURITY DEPOSIT:** Lessee will deposit with Lessor, upon the execution of each Schedule and for each Unit, the sum therein specified, as security, to be applied at Lessor's option to the payment and performance of all of Lessee's obligations hereunder, in relation to any such Unit. Lessee further understands that such deposit will not excuse the timely performance of all of Lessee's obligations hereunder with respect to each Unit. Lessor may, but shall not be obliged to, apply the security deposit, or any portion thereof, to any amounts due Lessor under this Lease, in which event Lessee will promptly restore the security deposit to the full amount specified in the corresponding Schedule. Any part of the deposit not so applied will be returned to Lessee, without interest, on the Expiration Date of each such Unit.

(5) **TAXES AND OTHER CHARGES:** (a) In addition to the monthly rental charge provided herein, Lessee will pay all costs, expenses, fees, fines, charges and taxes (other than any income or franchise taxes levied upon or measured by the net income of Lessor, and those expenses for Lessor's account pursuant to Paragraph 6 hereof) related with the acquisition, ownership, licensing, lease, registration, titling, delivery, purchase, sale, rental, possession, use or operation of each Unit leased hereunder. Furthermore, Lessee will pay all personal property taxes levied against each Unit during Lessee's possession thereof, and until such Unit is sold pursuant to Paragraph 10 (open-end), or returned pursuant to Paragraph 11 (closed-end).
  (b) Lessee agrees that should any payment due under the Lease not be paid within 10 days of the due date, such overdue payment will, at the election of Lessor, be subject to a late charge equal to 1 1/2% of such overdue payment, or at the maximum legal rate of interest, whichever is less. Such late charge will be paid concurrently with the payment then due. In the event Lessor is required by any public authority to pay any fine imposed upon Lessee, as indicated in Paragraph 7 hereof, Lessee will pay Lessor, upon demand and as a service charge, the amount of $2.50 for each such fine, which amount shall be in addition to reimbursing Lessor for any payment so made. Lessor may, from time to time, modify the amount of the aforementioned service charge.

(6) **UNIT REGISTRATION AND LICENSING COSTS:** It will be Lessor's responsibility to obtain, in its name, the corresponding Unit's registration, title and license plates, however, Lessor will have the option of either requiring Lessee to reimburse such expenses, or requiring Lessee to pay, together with the monthly rental charge, a proportional amount of the annual licensing costs including each increase in licensing, titling or registration costs incurred by Lessor with respect to each Unit subsequent to the date of the Schedule pertaining thereto.

(7) **UNIT USE AND MAINTENANCE:** (a) Lessee guarantees that each Unit will be used and operated in compliance with all laws relating to its possession, use or maintenance, and with respect to passenger vehicles, under no circumstances will the Unit be used for the transportation of goods or passengers for hire. No Unit will be used for the transportation of hazardous materials, illegal drugs or arms, or for any other illegal purpose whatsoever; additionally, no Unit will be used in racing or any other similar contests or activities. Lessee furthermore agrees that he, she or it will only use, or allow the use of each Unit, in a careful manner, for lawful purposes, within the manufacturer's specified maximum gross weight limits and inside the jurisdiction of Puerto Rico. Lessee will, during the Term and at his, her or its sole expense, maintain each Unit in good condition and appearance, operating order and repair, and in accordance with the manufacturer's warranty recommendations or requirements. It will be Lessee's responsibility to pay, in relation to such use and maintenance, for all service and maintenance costs, including but not limited to, oil and lubrication, gasoline, parts and materials, repairs and labor, tubes and tires, parking and storage, tolls, fines and penalties, and towing of any Unit.
  (b) Lessee guarantees that Unit will not be used to load, unload, transport or haul any of the following:
    (I) explosives or any substance by whose decomposition or combustion gas is generated with such rapidity that it can be used for blasting or in firearms, or for the generation of power.
    (II) gasoline or petroleum by products, including liquefied petroleum gas, or any other flammable or hazardous substance.
    (III) pollutants meaning any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids,

alkalies, chemicals and waste material inclu[ding] materials which are intended to be or have been recy[cled,] reconditioned or reclaimed.

(c) Upon Lessor's req[ues]t or when so required by law, Lessee will, at his, her or its own expense, deliver any Unit for inspection with the neare[st] appropriate party or agency, and when demanded by Lessor, will furnish him with written evidence thereof. Furthermore, Lessee will, when so required by law and at hi[s,] her or its own expense, maintain inside or attach to any Unit, a sign, tag, decal, legend or other notice or document supplied by Lessor for the purpose of protecting [or] disclosing the fact that such Unit is leased.

(8) ALTERATIONS: Lessee shall not make any alterations, additions or improvements, or install any accessory, equipment or device on any Un[it] without Lessor's prior written consent. All additions and improvements made to any Unit shall belong to Lessor and be subject to the terms and conditions of this Lea[se.]

(9) INSURANCE COVERAGE AND INDEMNIFICATION: (a) All risk of loss of any Unit or damage to it shall be borne by Lessee. At h[is,] her or its expense and cost, Lessee will provide and maintain, in relation to the use, operation and maintenance of each Unit, during the entire term of this Lease and [at] any time thereafter, if the risk of any Unit(s) remains with Lessee as provided herein, insurance coverage in form and with insurers or underwriters authorized to do busine[ss] in the Commonwealth of Puerto Rico, to the satisfaction of Lessor and, from time to time, as follows:

(i) Comprehensive insurance coverage which shall include fire, theft and collision insurance, and insure each Unit for either the value of t[he] Unit in Lessor's books, or its actual cash replacement value, whichever is higher, and which coverage shall be subject only to a deductible not to exceed $250, or $5[00] when the Unit is a heavy truck, and which shall name Lessor, and upon its demand, each of its assignees, as loss payee(s) as provided in a standard loss payable provisi[on.]

(ii) Property damage and bodily injury liability insurance coverage covering the interests of both Lessor and Lessee, which coverage shall nar[ne] Lessor as an additional insured and contain minimum coverage limits of $100,000 for bodily injury or death of any one person per occurrence and, subject to such a lim[it] per person, $300,000 for all persons killed or injured in the same occurrence, and $50,000 for property which suffers loss of use, damage or destruction due to any sing[le] occurrence.

(iii) All other insurance coverage or bonds lawfully required for the use or operation of any Unit.

(b) All insurance policies required by this Lease shall contain a provision establishing that any cancellation or reduction in the amounts [of] coverage under the said policy will not take place unless, and only when the insurer has given Lessor a thirty (30) day advance written notice by certified mail. Befo[re] any Unit is delivered to Lessee, Lessee will provide Lessor with a certificate, to Lessor's satisfaction in form and substance, evidencing all required insurance cover[age] and establishing that such coverage shall be in effect prior to such delivery. Additionally, before any Unit is delivered to Lessee, and subject to Lessor's satisfaction, Less[ee] will provide Lessor with evidence establishing that all insurance premiums for the insurance coverage required from Lessee under the Lease have been duly paid for a peri[od] of at least one year from the Commencement Date. Lessee will also provide Lessor with a certificate, to Lessor's satisfaction in form and substance, evidencing the renew[al] of all insurance coverage required under the Lease, at least ten (10) days before its expiration thereof. Lessee will diligently provide Lessor with, upon the latter's deman[d,] a certified copy of each insurance policy, and in the case of insurance arranged directly by Lessee, Lessor, at its option, may request that the corresponding annual premi[um] be paid in advance, and evidence of such advance payment be, to Lessor's satisfaction, provided to Lessor at its demand.

(c) When and if Lessee should desire to have such insurance coverage arranged by Lessor, Lessor will, once it receives such a request fro[m] Lessee, display its best efforts to arrange the same with Lessor's insurance broker or carrier, which broker or carrier and not Lessor, will ultimately decide whether or n[ot] they provide Lessee with such insurance coverage. In such cases when insurance coverage is so arranged by Lessor, Lessee will pay Lessor, in addition to and in conjuncti[on] with the monthly rental charge, the sum of the insurance charges contained in the applicable Schedule. Lessee acknowledges that insurance premium rates are frequen[tly] subject to change, and should an increase in such premium rates take place, Lessee hereby agrees to pay such an increase upon demand. Any arranging of insurance [by] Lessor as before mentioned, is carried out exclusively for the convenience of Lessee and will not in any way modify any of Lessee's obligations under this Lease, includi[ng] but not limited to the provision and maintenance of the required insurance coverage. It shall not be understood that Lessor is either making any representations or assumi[ng] any responsibility with regards to the adequacy or enforcement of insurance coverage. Furthermore, any insurance coverage arranged by Lessor may be cancelled at a[ny] time through the corresponding insurance broker or carrier by either Lessor or Lessee, upon written notice given to the other party hereto at least twenty (20) days bef[ore] such cancellation. In the event such a cancellation takes place, Lessee will be required to provide Lessor with a certificate, to Lessor's satisfaction in form and substan[ce] evidencing replacement of the insurance coverage required under the Lease, at least five (5) days before the date such cancellation comes to effect, and it will at no tim[e] be understood that such a cancellation relieves Lessee of his, her or its obligation to maintain the minimum insurance coverage brought for above, or any of Lessee's ot[her] obligations under this Lease.

(d) Any amounts corresponding to insurance payments received by Lessor as a result of any loss or casualty which has since then been repair[ed] or replaced by Lessee, to Lessor's satisfaction, will be forwarded to Lessee, if and whenever Lessee is not at such time in default under this Lease. Should the insura[nce] coverage required not fully cover all losses or damages of any one Unit, Lessee will cover such loss and proceed to repair any such damage at his, her or its sole cost a[nd] expense. In such cases as the repair has cost $500 or more, Lessor may request an inspection of the Unit at Lessor's facilities prior to indicating its satisfaction with t[he] repairs. Lessor may, whenever Lessee fails to maintain the herein required insurance coverage or does not provide Lessor at the specified times with evidence there[of,] obtain the required insurance coverage on Lessee's behalf and at his, her or its expense, in which case such expense will be due and payable to Lessor on the followi[ng] monthly rental payment date.

(e) Lessee hereby agrees to indemnify, save, protect and, in general, hold Lessor, and its assigns, agents, servants and employees harmle[ss,] irrespective of any liability for negligence, against all claims, actions, proceedings, expenses, damages, injuries, liabilities or losses, including legal expenses, of whiche[ver] kind and nature, and arising in connection with each Unit, including, without limitation, its manufacture, selection, purchase, delivery, possession, use, storage, maintenan[ce,] repair, condition (including latent and/or other defects whether or not discoverable), ownership, operation or return and irrespective of the person who manufactur[ed,] selected, purchased, delivered, possessed, used, stored, maintained, repaired, operated or returned such Unit, and/or any claim that might arise and be based upon str[ict] liability imposed on Lessor. Additionally, Lessee will indemnify and bear all risk against damage, theft, loss or destruction, partial or complete, of each Unit from a[ny] possible cause. This indemnity clause will remain in full force and effect despite the termination of this Lease.

(10) RETURN, DISPOSITION AND REPLACEMENT (OPEN END LEASES ONLY): (a) Upon the expiration or other termination of this Le[ase,] and except as may otherwise be provided herein, Lessee will return each Unit to Lessor at the latter's place of business or any other location that may have been agre[ed] by the parties. It will be Lessee's responsibility to cover all expenses incurred by Lessor for the return of any Unit to the latter's place of business or any other agreed locati[on.] All Units to be returned will be free of any personal property belonging to Lessee, including all advertising, tags, decals or insignias placed thereon by Lessee. Sho[uld a] Unit be returned with tags, decals, insignias and/or other advertising attached to it, Lessor will remove the same at Lessee's cost. It will be Lessee's responsibility to ret[urn] with each Unit all license plates and documents of registration belonging to each such Unit and entrusted to Lessee. This Lease will continue in effect with respect to [a] Unit, in spite of the fact that such Unit has been returned, and Lessee will continue to bear each Unit's risk until the Expiration Date.

(b) The following definitions will be controlling for the following terms under this Lease and Schedule(s):

1. "Residual Value at the End of the Contract"-with respect to each Unit this term will mean the amount indicated in the applicable Schedu[le;]

2. "Net Sale Proceeds" - will be considered the gross sales proceeds obtained by Lessor from the sale of each Unit, minus any outstand[ing] amounts owed by Lessee to Lessor at such time and under this Lease, and minus all expenses incurred by Lessor in relation to such a s[ale,] including but not limited to, license plate fees, title transfer fees, ACAA and selling expenses for which, if such expenses were not pa[id,] Lessor would be liable, or for which non-payment would result in the imposition of a lien upon such Unit;

3. "Depreciation" - will be considered the amount equal to the product of the Monthly Depreciation Credit indicated in the applicable Schedule(s), multiplied by the total number of months for which the monthly rental has been paid in full.

(c) Lessor will, upon the return of any Unit by Lessee, sell each such Unit as soon thereafter as is reasonably practicable, but in every case, du[ring] the first sixty (60) days following such return, and will provide Lessee with a statement of the Net Sale Proceeds. Whenever the Net Sale Proceeds of any Unit sur[pass] the amount indicated as Residual Value at the end of the Contract in the Schedule, Lessor will proceed to pay Lessee such excess, provided that Lessee is not then in def[ault] under this Lease. On the other hand, whenever the Residual Value at the end of the Contract of any Unit surpasses the Net Sale Proceeds thereof, Lessee will, upon dema[nd,] proceed to pay Lessor an amount equal to such excess. It shall be understood that Lessor will be authorized to sell each Unit upon the return of any such Unit by Les[see] for the best price obtainable. Lessee acknowledges that Lessor does not maintain facilities to sell motor vehicles at retail or through private sale, and furthermore, th[at it] has no obligation to do so with respect to any Unit. Under no circumstances, unless otherwise provided in writing by Lessor, will the return of any Unit before the termina[tion]

3

of this Lease, be understood or construed as a rele___ of any of Lessee's obligations hereunder.

(d) Were this Lease (open-end) to be terminated at any time before the Expiration Date for any reason whatsoever except Lessee's default, and notwithstanding anything to the contrary provided herein, Lessee will hereby pay Lessor upon such termination the sum of: (1) the Residual Value existing at such time, which will equal the acquisition cost minus the monthly depreciation credit multiplied by the number of months paid at such time by Lessee; and (2) the amount by which Lessor's net lease charge per month (i.e. the lease charge per month minus the monthly depreciation, the allocable cost of the license plates, ACAA and insurance premiums), using the rule of 78 method, times the minimum lease term, exceeds Lessor's net lease charge on a straight line basis times the number of months for which rental charges have been paid and the net sales proceeds. Lessor will receive from Lessee one month's rent as compensation for overhead expenses in the event of such an early termination.

(11) RETURN OF UNIT AND EXCESS WEAR (CLOSED-END LEASES ONLY):

(a) Lessee will, upon the expiration or other termination of this Lease and except as otherwise provided herein, return each Unit to Lessor at the latter's place of business or at any other agreed location. All expenses incurred by Lessor for the return of any Unit to Lessor's place of business or any other agreed location will be paid by Lessee. Each returned Unit will be free of Lessee's personal property including all advertising, tags, decals or other insignia placed on such Unit by Lessee, and will be returned in the same condition such Unit was in when delivered to Lessee, with the exception of ordinary wear and tear. Should Unit be returned with tags, decals, insignias and/or other advertising attached to it, Lessor will remove the same at Lessee's cost. Unit excess wear will be determined according to the following guidelines: Unit will be mechanically sound, and will not be missing any parts, will have a matching set of five tires with not less than 25% of even wear remaining, and have no body scratches or dents of over one inch in length or diameter and no rust that cannot be removed, no mismatch of paint in areas that may have been repainted, no special fleet colors or identification, and no paint scratches, chips or rusted areas of over one inch in length or diameter or series of smaller ones; the front and rear windshields will not be cracked, chipped, pitted or scratched, have no broken or cracked glass of any kind, no malfunctioning or inoperative window mechanisms, no broken sealed beams or lenses, no peeled or scratched chrome and other bright metal exterior trim with scratches through to the metal of over one inch in length, nor dents that are larger than one inch in length or diameter, or a number of smaller dents in the same molding including headlight and taillight bezels, no grills that are broken or damaged, nor bumper dents measuring more than an inch in length or diameter, and no damaged burned or torned seats, seat backs, carpeting, door panels, dash or headlining. All costs incurred by Lessor for any reconditioning that may be required due to excess wear and tear, may be assessed as additional rent.

(b) Were this Lease to be terminated at any moment before the Expiration Date for any other reasons but Lessee's default, and notwithstanding any provision to the contrary contained herein, Lessee will proceed to pay Lessor, upon such termination, all unpaid rentals for the remainder of the Term of the Lease, and all other sums that are payable by Lessee pursuant to any provision of this Lease then outstanding and unpaid. Unless otherwise provided by Lessor in writing, never will early termination under this Lease be understood or considered as a release of Lessee's obligations under the Lease.

(c) Once each Unit is returned in accordance with the conditions indicated above, and when all terms and conditions of this Lease have been complied with, neither Lessor nor Lessee will be further obligated to each other. With respect to closed-end leases, Lessee will continue to be liable under this Lease, although Lessor has received the returned Unit from Lessee, whenever any condition, term or payment under the Lease still remains unpaid, outstanding or unfulfilled.

(12) UNITS DEEMED SOLD: All Units will be deemed to have been sold for the purposes of this Lease, whenever Lessor has received the cash proceeds thereof. In the event that any Unit is lost, stolen, damaged beyond repair or in any other way not capable of being returned by Lessee, such Unit will, as a consequence thereof, be deemed to have been sold pursuant hereto without any value whatsoever.

(13) WARRANTY DISCLAIMER: LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO ANY MATTER WHATSOEVER INCLUDING, WITHOUT LIMITATION THE CONDITION OF ANY UNIT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. LESSEE ACCEPTS DELIVERY OF EACH UNIT LEASED HEREUNDER FROM LESSOR, AS IS. NO DEFECT IN, OR FAILURE OR UNFITNESS OF ANY UNIT WILL RELIEVE LESSEE OF ITS OBLIGATION TO PAY RENTAL CHARGES AND PERFORM ALL OTHER OBLIGATIONS REQUIRED UNDER THIS LEASE. LESSOR WILL NOT BE LIABLE FOR ANY LATENT OR PATENT DEFECTS IN ANY UNIT, OR FOR ANY SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES. Lessor shall permit Lessee to enforce in Lessee's own name any and all warranties made by the manufacturer of each Unit, but Lessor assumes no responsibility for compliance therefor by the manufacturer.

(14) CARGO LOSSES: Lessee agrees to release, defend, indemnify and hold harmless Lessor, its directors, officers and agents against liability for any loss or damage (including consequential damage) to any cargo or other property transported in or on any Unit or trailer pulled by a Unit.

(15) REPORTS: At Lessor's request, Lessee will promptly inform Lessor of the exact location of each Unit, allow Lessor to examine it, and provide Lessor with the names and addresses of the principal drivers of each Unit. Any accident related with the use and operation of any Unit will be notified immediately and without demand to Lessor by Lessee who, upon demand, will provide Lessor or its representatives with all other details and information related with said accident as may, thereafter, reasonably be requested. It will be Lessee's responsibility in connection with any such accident, to provide Lessor with complete copies of any and all notices, correspondence and documents received by Lessee in relation to any claim, action or demand charging Lessor with liability, and Lessee will equally promptly inform Lessor of any tax lien attaching to any Unit and any change of location of any Unit carried out by Lessee, from the garage location that is specified in the applicable Schedule or Supplements, if any, attached hereto. Additionally, Lessee will promptly prepare and provide Lessor with such documents, returns or forms required by any public authority or other regulatory body, or by the manufacturer in relation to its warranty. All of the above will be at Lessee's sole expense.

(16) OWNERSHIP AND ASSIGNMENT: (a) THIS INSTRUMENT IS A LEASE AND NOT A SALE'S CONTRACT. Each Unit belongs exclusively to Lessor and Lessee will not have any rights, title or interest in it, and no option whatsoever to purchase any Unit at any time. Lessor will be entitled at any time and without any notice to Lessee, and Lessee so acknowledges, to assign this Lease and mortgage each Unit, including, without any limitation whatsoever, the right to assign Lessor's entire rights and interests in all moneys due at any one moment or in the future under the Lease, including the proceeds of sale from any Unit, to any lending institution, bank, other entity or person, or combination thereof, as assignee and to execute a chattel mortgage on, or security interest in, each any such Unit in favor of any such assignee. Upon notice from any such assignee, Lessee will pay all moneys then due or to be due in the future under the Lease, to such assignee, and with respect to the latter, Lessee hereby agrees that it will not state against such assignee any set-off, counterclaim or defense that Lessee may have against Lessor. Lessee will be entitled to the possession and quiet enjoyment of each Unit as long as he, she or it is not in default hereunder, provided, nevertheless, that this Lease and the use and possession of each Unit hereunder by Lessee, will at all times be subject and subordinated to any chattel mortgage or security interest placed upon any Unit by Lessor as aforesaid.

(b) Without Lessor's prior written consent, Lessee will not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease or any interest therein, nor sublet, lend, sublease or trip lease any of the Units, and furthermore Lessee will promptly inform Lessor in writing, before any significant change in ownership or any significant disposition of its assets, even if no assignment of this Lease is contemplated.

(17) DEFAULT: (a) When and if during the extension of this Lease, one or more of the following events occurs:

(I) A default is incurred in the payment of any part of the Monthly Rental Charge provided for in paragraph 3 hereof, or respecting any other sum payable by Lessee pursuant to this Lease, and such a default continues for five (5) days after written notice thereof has been forwarded by Lessor to Lessee;

(II) A default is incurred in the performance, compliance or observance of the covenants established in paragraph 9 hereof;

(III) A default is incurred in the performance, compliance or observance of any other covenant, conditions, and agreements contained in this Lease, by Lessee, and such default continues for ten (10) days after written notice thereof has been forwarded by Lessor to Lessee;

(Iv) An assignment is made by Lessee for the benefit of creditors, or Lessee accepts in writing his, her or its inability to pay his, her or its debts as these become due, files a voluntary bankruptcy petition, is found by a court to be bankrupt or insolvent, files a petition for reorganization, readjustment, composition, arrangement, liquidation, dissolution or any similar or related arrangement under any present or future statute or regulation, or consents or acquiesces to the appointment of a trustee, receiver or liquidator of all or any substantial part of his, her or its assets or properties, or if Lessee or his, her or its shareholders take any action directed at Lessee's dissolution or liquidation, or when Lessee is a corporation and it ceases to do business as a going concern;

(v) During the first thirty (30) days immediately following the beginning of a proceeding against Lessee seeking reorganization, readjustment, arrangement, liquidation, dissolution or any similar relief under any present or future statute or regulation, such proceeding has not been dismissed, or if during the first thirty (30) days following the appointment of any trustee, receiver or liquidator of any of a significant part of Lessee's assets and properties, such appointment has not been vacated;

(vi) An attempt is made by Lessee to transfer, sell or encumber, relinquish the possession of, or sublet any Unit or item thereof without Lessor's prior consent; then, in such an event, Lessee will be deemed to be in default under this Lease, and at its option, Lessor may proceed to terminate this Lease without



any further notice to Lessee. Upon receipt of original or copy by Lessee of such notice, Lessee will immediately surrender to Lessor any such Unit under the Lease at the time, and will proceed to deliver each such Unit to Lessor. Lessor is hereby authorized to enter into Lessee's premises for the purpose of repossessing such Unit(s). Lessor will take each surrendered and/or repossessed Unit free from this Lease and any rights Lessee might have had hereunder, and is authorized to sell such Unit(s) at a public or private sale, or relet any Unit in such manner and according to the terms Lessor understands to be reasonable, with such notice to Lessee as may be required by law. Lessor will retain any rent, deposit or additional sum paid by Lessee pursuant to this Lease and with respect to such Unit, together with any refund or other sum, if any, then in its possession, which, had this lease remained in full force and not terminated due to Lessee's default, would have otherwise been payable to Lessee hereunder. Furthermore, Lessor will have the right to recover from Lessee all unpaid rental charges for the remainder of the Term, Lessor's costs for the repossession of any Unit, and any other sum payable by Lessee under any of the provisions of this Lease then outstanding and unpaid, with the exception of the net proceeds received by Lessor from any reletting or sale of any such Unit. Lessor will be entitled to recover from Lessee all damages sustained by Lessor as a result of Lessee's breach of any of the covenants, terms or conditions of this Lease, and the aforesaid repossession and any sale or sales of any Unit(s) by Lessor, will not in any manner affect this right. Were Lessee to be found in default under this Lease, any other lease between the parties will equally be deemed to be in default, and Lessor will be invested in all rights indicated herein with respect to all other such leases. The remedies provided herein in Lessor's favor, upon Lessee's default, will not be considered exclusive, but instead will be cumulative and in addition to all other remedies in its favor available under law, equity or bankruptcy, and failure to proceed with any remedy upon the occurrence of any of the contingencies indicated herein, will not constitute a waiver of any such rights, upon the continuation or recurrence of any such contingency.

(b) Should Lessor find itself in the obligation of instituting legal action in order to enforce any of the terms, covenants or conditions of this Lease, or should Lessor incur in legal expenses due to any breach on the part of Lessee of any of the terms, covenants or conditions of this Lease, or should Lessee default hereunder, it will be Lessor's right to recover from Lessee, in addition to all other items of damage, all costs and expenses, including attorney's fees and court costs, which equal 30% of all amounts owed. Attorney's fees, court costs and expenses will accrue against Lessee upon the filing of such an action by Lessor.

(18) UNIT SPECIFICATIONS: By operating a Unit in service under this Lease, Lessee acknowledges that the Unit complies with specifications acceptable to Lessee. After the parties execute a Schedule identifying a Unit, any additions or changes to the Unit or related accessories, whether made at the request of Lessee or as required by any governmental authority, will be made at Lessee's expense.

(19) FINANCIAL STATEMENTS: Lessee will, upon request, furnish copies to Lessor of its latest quarterly and annual financial statement (including a balance sheet and income statement), audited by an independent certified public accountant.

(20) TIME OF ESSENCE; AMENDMENT WAIVER NOTICE: Time is of essence in this Lease. All waivers for the performance of any term, covenant or condition given by Lessor in any one instance will not constitute a waiver as to such terms, covenants or conditions at any other instance thereafter and such terms, covenants or conditions shall remain in full force and effect as if no such waiver had been given. Were Lessor to allow the use of any Unit(s) beyond the specified Term, it will be understood that Lessee's obligations hereunder are to continue and remain in effect, and such an action on the part of Lessor will not be construed as a renewal of the Term or a waiver of any of Lessor's rights under this Lease. In such a case Lessor will continue charging Lessee the same monthly rental charge stipulated for any such Unit(s). In spite of the foregoing, Lessor may request Lessee to return any such Unit to Lessor pursuant to paragraphs 10 or 11 hereof, once a ten (10) day advance notice is provided.

(21) LESSOR'S RIGHT TO PERFORM FOR LESSEE; RECORDING: Should Lessee fail to make any of the payments corresponding to any other amounts in addition to the rentals required to be paid by Lessee under paragraph 3 of this Lease, or fail to perform or comply with any of its agreements contained herein, Lessor may at its sole discretion make such payment or perform or comply with such agreements. Any reasonable expense incurred by Lessor in relation to such payments, performance or compliance with such agreements, as the case may be, as well as such interest thereon at the rate of 1 1/2% per month or at the maximum legal rate of interest permitted by applicable law, whichever is less, will be owed and payable by Lessee upon demand. Lessee will at its expense, and as requested by Lessor, at any time execute, deliver, file, acknowledge, register, record or deposit to the satisfaction of Lessor, any and all instruments required by law, or reasonably requested by Lessor, for the protection of Lessor's title over any Unit, perfection of a lien over any Unit in favor of any of Lessor's assignees, or in any other way carrying out the intention of this Lease.

(22) CO-SIGNOR: All provisions in this Lease will be binding and enforceable against the Lessee as well as against any persons signing the same as co-signor(s). Any such co-signor(s) will be held, as has been agreed by the parties to this Lease, jointly and severally liable for any and all obligations imposed on Lessee under the Lease.

(23) NOTICES: All notices given or required to be given under this Lease must be in writing and either hand-delivered or sent by regular mail, postage prepaid, to the address of the recipient designated above or such other address as the recipient has given the sender in writing. Hand delivered notices will be effective on delivery and regular mail notices will be effective on the business day following the mailing date.

(24) GENERAL: This Lease will be construed and interpreted according to the Laws of Puerto Rico and may be signed in any number of counterparts each constituting a duplicate original. All paragraph headings are intended for the convenience of the parties and they will not serve as a guide to the interpretation of this Lease. This Lease, together with its Schedules, constitutes the entire agreement between Lessor and Lessee, superseding any prior oral or written representations, agreements or understandings relating to this Lease or its subject matter, and it shall be binding upon and inure to the benefit of the parties, their respective heirs, executors, successors or assigns. This Lease cannot be altered except in writing. Lessee acknowledges that no individual has made any representations or warranties on behalf of Lessor which are not contained herein. Any provision of this Lease which is deemed unenforceable, or is prohibited will not invalidate the remaining provisions hereof. Lessee hereby agrees to subject itself to the exclusive jurisdiction of the courts of the Commonwealth of Puerto Rico, San Juan Part, in any action or proceeding arising, or related in any way with this Lease.

LESSEE ACKNOWLEDGES RECEIPT OF A COPY OF THIS LEASE, CONFORMING TO THE ORIGINAL HEREOF AND REPRESENTS AND WARRANTS THE UNIT WILL BE USED FOR BUSINESS, COMMERCIAL OR AGRICULTURAL PURPOSES, AND WILL NOT BE USED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES. THIS LEASE IS NOT A CONSUMER LEASE WITHIN THE MEANING OF THE CONSUMER LEASING ACT OF 1976.

IN WITNESS WHEREOF, the parties hereto have executed this Lease Agreement on the day and year first above written.

This contract is not valid and binding on Popular Leasing & Rental, Inc. until accepted and executed by an authorized officer of Popular Leasing & Rental Inc.

Popular Leasing & Rental Inc.
Lessor

By: LOUIS M. DE JESUS
Title: SALES VICEPRESIDENT
Date Signed: 25 September 1992

WITNESS:

ANA R. OLIVELLA RIVERA
Lessee

By: Ana R. O.
Title:
Date Signed: 25 September 1992

WITNESS:

# POPULAR LEASING
Leasing & Rental

SCHEDULE

SCHEDULE NO. 1

This schedule, when executed, will become a part of, and will be subject to the Lease Agreement entered between the undersigned parties on September 25, 19 92; Lease Agreement No. 7686. By executing this Schedule Customer (Lessee) is authorizing Popular Leasing & Rental Inc. (Lessor) to order and purchase the Unit described below for its Lease to Customer (Lessee).

| CUSTOMER NO. | UNIT NUMBER | YEAR | MAKE | MODEL | SERIAL NUMBER |
|---|---|---|---|---|---|
| 7686 | 8337 | 1992 | NISSAN | STANZA TAM | JN1FU21PNNX901827 Tablilla: |

**VEHICLE DESCRIPTION**

4 Cylinders
Power Steering
Power Windows
Factory Air Conditioning
Wheel Covers - Deluxe
Left and Right Remote Control Mirrors
Digital Clock
Tilt Steering Wheel
Heavy Duty Suspension
Aluminum Wheels

Automatic Transmission
Power Brakes
Power Door Locks
Radio AM/FM, Stereo, Cassette
Radial Tires
~~Sun Roof~~ (N)
Cruise Control
Floor Mats
Body Side Moulding

| | | |
|---|---|---|
| Minimum Lease Term | | 60 Months |
| Acquisition Cost | | $ 21,640.00 |
| Advance Payment | | $ 2,000.00 |
| Monthly Depreciation Credit | (Down Pay. dealer) | $ 258.00 |
| Monthly Rental Charge | | $ 393.00 |
| Security Deposit | | $ 0.00 |
| Residual Value | | $ 4,500.00 |
| Commencement Date | | September 25, 1992 |
| Rental Starts | | October 1, 1992 |

**INCLUDED IN MONTHLY LEASE CHARGE**
License Plate and Compulsory Insurance (ACAA)  $ 13.00
Liability and Physical Damage Insurance  (CVP)

TOTAL RENT  $ 393.00

Popular Leasing & Rental Inc. (Lessor)
By: LOUIS M. DE JESUS
Title: SALES VICEPRESIDENT
Witness: ___

Customer (Lessee): ANA R OLIVELLA RIVERA
By: ___
Title: ___
Witness: ___
Date: September 25, 19 92

This schedule is not valid and binding on Popular Leasing & Rental, Inc. until accepted and executed by an authorized officer of Popular Leasing & Rental, Inc.

WHITE - Costumer File · CANARY - Insurance · CANARY - Insurance · PINK - Accounts Payable · BLUE - Customer

33

SCHEDULE

 **POPULAR LEASING**
Leasing & Rental

SCHEDULE NO. 1

This schedule, when executed, will become a part of, and will be subject to the Lease Agreement entered between the undersigned parties on September 25, 19 92; Lease Agreement No. 7686. By executing this Schedule Customer (Lessee) is authorizing Popular Leasing & Rental Inc. (Lessor) to order and purchase the Unit described below for its Lease to Customer (Lessee).

| CUSTOMER NO. | UNIT NUMBER | YEAR | MAKE | MODEL | SERIAL NUMBER |
|---|---|---|---|---|---|
| 7686 | 8337 | 1992 | NISSAN | STANZA TAM | JN1FU21PNNX901827 Tablilla: |

### VEHICLE DESCRIPTION

| | |
|---|---|
| 4 Cylinders | Automatic Transmission |
| Power Steering | Power Brakes |
| Power Windows | Power Door Locks |
| Factory Air Conditioning | Radio AM/FM, Stereo, Cassette |
| Wheel Covers - Deluxe | Radial Tires |
| Left and Right Remote Control Mirrors | Sun Roof |
| Digital Clock | Cruise Control |
| Tilt Steering Wheel | Floor Mats |
| Heavy Duty Suspension | Body Side Moulding |
| Aluminum Wheels | |

| | | |
|---|---|---|
| Minimum Lease Term | | 60 Months |
| Acquisition Cost | | $ 21,640.00 |
| Advance Payment | (Down Pay. dealer) | $ 2,000.00 |
| Monthly Depreciation Credit | | $ 252.00 |
| Monthly Rental Charge | | $ 393.00 |
| Security Deposit | | $ 0.00 |
| Residual Value | | $ 4,500.00 |
| Commencement Date | | September 25, 1992 |
| Rental Starts | | October 1, 1992 |
| **INCLUDED IN MONTHLY LEASE CHARGE** | | |
| License Plate and Compulsory Insurance (ACAA) | | $ 13.00 |
| Liability and Physical Damage Insurance | | (CWP) |
| TOTAL RENT | | $ 393.00 |

Popular Leasing & Rental Inc. (Lessor)     Customer (Lessee): ANA R OLIVELLA RIVERA

By: LOUIS M. DE JESUS     By: Ana R. ...
Title: SALES VICEPRESIDENT     Title:
Witness:     Witness:
                                 Date: September 25, 19 92

This schedule is not valid and binding on Popular Leasing & Rental, Inc. until accepted and executed by an authorized officer of Popular Leasing & Rental, Inc.

WHITE - Costumer File · CANARY - Insurance · CANARY - Insurance · PINK - Accounts Payable · BLUE - Customer