## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| **NANCY ISAAC BURGOS, et als.** | * | **CIVIL CASE: 03-1249 (JAF)** |
| **Plaintiffs** | * | |
| | * | |
| **vs.** | * | |
| | * | |
| **CITIBANK, N.A., et. als.** | * | |
| **Defendant** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## REPLY AND OPPOSITION OF SUMMARY JUDGMENT AND PLAINTIFF MOTION TO SUMMARY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW Plaintiffs through the undersigned attorney and most respectfully submits the present memorandum in reply and opposition to Defendants' Motion for Summary Judgment.

Plaintiffs' request that summary judgment be denied by this Honorable Court for there exists ample grounds to find that all the Defendants are jointly responsible for their careless negligence in collecting the arrear payments that allegedly Mrs. Nancy Isaac Burgos had. This collection procedure was negligently made prior and while Mrs. Nancy Isaac Burgos was detained and/or arrested, her regulation firearm was taken from her and she was cited to appear before the District Attorney's Office. Defendants were truly negligent when they acted contrary to clause five of the Citibank's Conditional Sales Contract, which grants sufficient authority to said Defendant to proceed and collect the alleged arrear payments within the legal authority granted by both the conditional sales

contract and the various federal and local statutes. Furthermore, the illegal conduct involved in this case also results from the contractual relationship existing between Citibank, N.A. and Professional Research and Community Services, Inc. (herein after Professional).

Let us proceed first with our Reply and Opposition to Defendant's Motion for Summary Judgment.

## I. INTRODUCTION

The present case was filed on March, 2003, Defendant Citibank, N.A. was served and thereafter it filed a motion to dismiss. The grounds for the initial dismissal presented were jurisdictional allegations that the Honorable Court had no jurisdiction to proceed in this case, for Citibank, N.A., is a national banking association; and that the Honorable Court could only entertain a civil complaint, if the cause of action arises from a major banking activity. A reply to the said motion was filed by Plaintiffs, and this Honorable Court entered a judgment against Plaintiffs and therefore dismissed the present case with prejudice. An appeal was entered by Plaintiffs before this Honorable Court.

After both, Plaintiffs and Defendants, filed their corresponding briefs before the United States Court of Appeals, in an opinion by said Court, it was determined that a banking collection activity where a bank loan is declared in default is considered a major banking activity. The case was remanded to the Honorable Court to continue with proceedings consistent with the opinion entered by the United States Court of Appeals.

After the discovery proceedings were finalized, Defendant Citibank, N.A. filed a Motion Requesting Summary Judgment alleging that the present case should be dismissed on the following grounds:

a.  Defendant indicates that the present cause of action was filed untimely; and according is time barred.  Plaintiff opposes said ungrounded allegation, for the damages arising in the present case result from the contract nature between Plaintiff and Citibank, N.A and the contract between Citibank, N.A. and Professional.  The statute of limitations applicable is not one year, but a fifteen year period; and the action is not under Puerto Rico Civil Code Art. 1802 and 1868, 31 P.R. Laws Ann. §5141 and 5298, but under Art. 1052, Art. 1054, and Art. 1057; 31 P.R. Laws Ann. § 3016, §3018, §3021, as well as Art. 1864, 31 P.R. Laws Ann. § 5294.

b.  Moreover, Defendant Citibank, N.A. argues in its memorandum of law, that the present cause of action claims an intentional tort, under the malicious prosecution doctrine.  Therefore, Defendant Citibank, N.A. cannot be held responsible under said tort doctrine.  Defendant alleges that other third parties can be held responsible.  Plaintiff opposes said contention for Defendants collectively acted carelessly and negligently, when it instituted erroneously a criminal complaint against Plaintiff. Furthermore, all actions by Professional were authorized by Citibank or result from the contract between Citibank and Professional.  This case

falls under the doctrine established in <u>Martinez v. Chase Manhattan Bank</u>, 108 D.P.R. 515 (1979), where Professional was also a co-defendant.

c. It worries Plaintiffs when Defendant Citibank states that there is a novation in the contract. To Plaintiff, said novation did not prevent Defendants enforce the conditional sales contract as expressed in the original contract. In accordance with the United States Court of Appeals's opinion, it makes no difference if there is a novation or not. The Circuit Court recognized that the initial contract grants sufficient authority to Citibank, N.A. to act and file either criminal charges or a civil suit. Plaintiffs wholeheartly agree with this ruling, for the conditional sales contract grants sufficient authority to Defendant Citibank, N.A. to institute any collection procedure (either civil or criminal) against Plaintiff Nancy Isaac Burgos in any court of law at any time within Puerto Rico. However, the crux of the matter is: "Whether or not the procedural aspect of the collection, which arises from clause five of the conditional sales contract, was done properly and in compliance with Due Process; and whether or not Mrs. Nancy Isaac civil rights were violated when said collection procedures were negligently done?" Articles 1054, 1056 and 1057, 31 P.R. Laws Ann. § 3018, 3020, and 3021, are applicable under basic contract law and also

in cuasi-contract theory under the Articles 1791 to 1793 of the P.R.
Civil Code, 31 P.R. Laws Ann. § 5104, 5105, and 5106.

On the basis of Defendants' arguments, which are totally erroneous,
Plaintiffs opposes the Motion for Summary Judgment taking into consideration the
following facts:

## II. SUMMARY OF FACTS

The present summary of facts constitutes a brief version of the facts.  For a
more detailed version, see Statement of Contested and Uncontested Facts,
included and made part of this memorandum.

On 1989, Mrs. Nancy Isaac Burgos, daughter of Gilberto Isaac Sánchez and
Miguel Burgos Rivera, both deceased, married Mr. José Antonio Rosario de la
Cruz.  **See Statement of Contested Facts Number 1 and 4**.  Of this marriage, on
March 13, 1989, minor Jose Antonio Rosario Isaac was born in San Juan, Puerto
Rico.  **See Statement of Uncontested Facts Number 1 and 2**.

On May 15, l986, Mrs. Nancy Isaac became a Police Officer of the
Commonwealth of Puerto Rico.  She has served continuously for more than 20
years, first as a narcotic undercover agent and later on as a radio dispatcher.  **See
St. of Uncon. F. No. 3 and 13**.

Late in 1995, Mrs. Nancy Isaac Burgos moved with her parents at the
following address: <u>Calle Carmen Hernández #844, Urbanización El Comandante,
Río Piedras, Puerto Rico 00924</u>.  **See St. of C. F. No. 1.**  She initially moved to
said address due to marital problems with her husband Jose A. Rosario De la Cruz,

and she left her residence located at Villa Carolina, Carolina, Puerto Rico. **See St. of Uncon. F. No. 1 and 2; see also St. of C. F. No. 2.** Thereafter, Mrs. Nancy Isaac Burgos continued to live at her parents address due to the illness both were suffering. Her mother suffered from renal insufficiency and had to receive dialysis three times a week. She died on 1999. On the other hand, her father, a combat officer of World War II, suffered from Parkinson disease; in the last years of his life was almost immobile and had to be taken care of for his most essential bodily functions. He died on 2003. **See St. of Uncon. F. No. 4 and St. of C. F. No. 3 and 4.**

Mrs. Nancy Isaac Burgos continued to live at said address after losing both of her parents, and until <u>November, 2005</u>. This is verified by Mrs. Carmen Paris sworn statement. **See St. of C. F. No. 5.**

Citibank is a major national banking association who has a banking branch in Puerto Rico. **See St. of C. F. No. 18.** One of its major banking activities is debt collection, which in the present case was performed by Professional Services, which employed Mr. Jose Lopez Camacho as a debt collector in charge. Professional Services is insured by National Insurance Company, who also has appeared as a third-party defendant. **See St. of Uncon. F. No. 18, 19 and 20; see St. of C. F. No. 19; and see also Pretrial Conference Memorandum Stipulated Facts.**

On August 1996, Nancy Isaac Burgos purchased a new Montero Mitsubishi Model year 1996 for the price of $29,545. **See St. of C. F. No. 6.** She gave a

6

$5,000 down payment and the remaining price was financed with Citibank, N.A. through a conditional sales contract.  **See St. of C. F. No. 6.**  As part of the conditional sales contract information, and as requested initially by Citibank, N.A., she legitimately gave as her residential address the one stated above.  **See St. of C. F. No. 7.**  This address has also been recognized by the Police Department and the Commonwealth of Puerto Rico.  **See St. of C. F. No. 8.**

Because of her marital problems she became in arrears in her payments to Citibank, N.A., even though she also had a business enterprise located near her parents' residence consisting of an elderly and nursing home called Joezam.  **See St. of C. F. No. 9.**

Around May 2001, Citibank, N.A. and Professional, instituted collection procedures under the authority granted by the conditional sales contract.  **See St. of Uncon. F. No. 5 and St. of C. F. No. 17.**  Said conditional contract in its clause number five (5), grants sufficient authority for Defendant to collect any funds in arrears and/or repossess the vehicle given as guarantee under said contract.  Said clause states the following:

"Under any of the above circumstance, **the Seller may proceed to collect the debt and/or repossess the Equipment with or without a judicial order but in any event in the manner prescribed by he applicable laws.**  In connection with the foregoing, the Seller may require that the Buyer place the equipment at the disposal of the Seller at the place that the Seller designates for him to be able to repossess it.  Once the Seller may resell the equipment at public auction with his consent through the means provided in the applicable laws, the Seller may resell the equipment at public auction or at a private sale, as the case may be, with the notice, if any, required by the applicable laws and we may bid at said sale.  The product of the sale shall be applied in the following order:

first, to pay the expenses incurred by the Seller as a result of the repossession and sale of the equipment, including storage, repair, preservation, expenses, costs, and attorneys' fees; second, to liquidate interest accrued but not paid under this Contract; and third, to liquidate any other sum owed under this Contract, including the remainder owed on the amount financed. The surplus, if any, shall be given to you."

Mr. Lopez Camacho, an employee or agent of Professional, was the person who first made contact which Mrs. Nancy Isaac Burgos. **See St. of C. F. No. 20.** Said contact was made both personally and by telephone. Also, Mr. Lopez Camacho visited Mrs. Nancy Isaac Burgos' place of employment at the Police Department, General Headquarters in Hato Rey, P.R. **See St. of C. F. No. 23.** There he talked to Lieutenant Jose Guevara Delgado, Mrs. Nancy Isaac Burgos's supervisor. Nancy Isaac Burgos served as radio operator at the Command Center in the Police Department, General Headquarters. **See St. of C. F. No. 11 and 21**.

On January 22, 2002, Nancy Isaac was arrested and/or detained by Sgt. Luis Diaz Carrillo at the Stolen Vehicle Division of the Police Department in Santurce. **See See St. of Uncon. F. No. 6 and St. of C. F. No. 12**. At said time, she was disarmed of her regulation firearm and her vehicle was confiscated, for it appeared as missing. **See both, See St. of Uncon. F. No. 7 and St. of C. F. No. 13**. Defendants informed to the police that Mrs. Nancy Isaac Burgos gave a false address. **See St. of C. F. No. 13, as well as copy of the criminal complaint filed against Mrs. Nancy Isaac Burgos.** Both, Citibank, N.A. and Professional Research and Community Services, Inc., through its agent Mr. Jose Lopez

Camacho, filed said criminal complaint under Public Law 8, alleging that her vehicle was stolen and/or missing, for she gave a false address. **See St. of C. F. No. 13.**

Contrary to said allegations and before being arrested, Mrs. Nancy Isaac Burgos was always present and always available to Defendants. First, Mrs. Nancy Isaac Burgos was contacted by Mr. Jose Lopez Camacho, who worked as an agent for Professional Research and Community Services, Inc., which in turn provides collection services for Citibank, N.A. under a Collection Agency Agreement. **See St. of C. F. No. 18, 19 and 20.** Mr. Lopez Camacho called Mrs. Nancy Isaac Burgos and explained to her, not only the purpose of the call, and that he wanted to seek a solution to the arrear payments. In the call, they agreed to meet at Plaza Trujillo on a certain date. **See St. of C. F. No. 27.** Both met at said site, and Mrs. Nancy Isaac Burgos tendered a check in payment to Mr. Lopez Camacho, but the same was not accepted. **See St. of C. F. No. 20, 26 and 27**. Second, Mrs. Nancy Isaac Burgos personally appeared in various occasions before October, 2001, at Professional's Office in Hato Rey, and made various payments in arrears. In these three occasions, she was driving the 1996 Montero, and this was seen by Mr. Lopez Camacho and Defendants prior to the filing of the criminal complaint. **See St. of Uncon. F. No. 16 and 17; see also St. of C. F. No. 10.**

Notwithstanding, the fact that Mrs. Nancy Isaac Burgos and the vehicle were seen by Defendants and/or its employees, and that she was readily available at the Police Headquarters; Citibank, N.A., Professional, and/or Mr. Jose Lopez

Camacho, continued to proceed and/or prosecute the criminal complaint. **See St. of Uncon. F. No. 8, 9, and 10; see also St. of C. F. No. 26.** On January 22, 2002, Mrs. Nancy Isaac Burgos was arrested and both her vehicle and regulation firearm were confiscated. **See St. of C. F. No. 12 and 13.**

The arrest was a direct consequence of the criminal complaint presented by Mr. Lopez Camacho against Mrs. Nancy Isaac Burgos, alleging that she presented a false residential address. **See St. of C. F. No. 13.** She was cited to appear before the District Attorney's Office in San Juan, where the District Attorney did not authorize the presentation of the case to a judge, found no probable cause against Mrs. Nancy Isaac Burgos and dismissed the case; for he understood it involved a civil matter. **See St. of Uncon. F. No. 8, 9, and 10; and also see St. of C. F. No. 14 and 16.**

On January 23. 2002, while working at the Police Department Headquarters, Mrs. Nancy Isaac Burgos suffered a work related accident. She became the laughing stock of her workplace due to the illegal arrest or detainment incident. She was taken to the State Insurance Fund, where she was initially evaluated by treatment physician and ordered to rest, while receiving treatment. **See St. of C. F. No. 15.** As a direct result of the incident of January 22, 2002, she suffered an spasm in her lower back and severe headaches, which caused her to receive treatment and medications. **See also St. of C. F. No. 15.** Due to this situation, Mrs. Nancy Isaac has also suffered mental and moral anguish, and has been treated for this situation by a psychiatrist. **See St. of Uncon. F. No. 11 and**

**12; also see St. of C. F. No. 22.**  She also suffered a stressful situation, for she feared for herself and her family due to the fact that she was disarmed and could be the target for an assault.  **See St. of C. F. No. 24.**  Also, she seeks compensatory damages on the lost of her vehicle for almost five (5) months.  **See St. of C. F. No. 25.**

On January 30, 2002, a civil case was filed before the court of first instance by Citibank claiming that Mrs. Nancy Isaac was in arrears in her payments.  In said complaint, Citibank gave to the court the address: Calle Carmen Hernández #844, Urb. El Comandante, Rio Piedras, Puerto Rico 00924.  No allegation is made by Citibank that this address was false or worse that the vehicle was stolen.  **See St. of Uncon. F. No. 14 and 15.**

For a more detailed and comprehensive statement of disputed and/or controverted facts, see Plaintiff's Statement of Contested and Uncontested Facts.

### III. CONTROVERSIES BEFORE THE COURT

The following are the main issues presented before the Honorable Court by defendant Citibank which plaintiffs unduly oppose.  The defendant presents the following issues to be resolved for summary judgment:

a.  Whether or not the present cause of action is time-barred under Article 1802 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann. §5141?

b.  Corollary to this issue is Plaintiff's allegation that the present cause of action arises from a contractual violation of Defendant in accordance to clause five (5) of the conditional sales contract.  This contractual clause

grants sufficient authority to file any lawful civil or criminal action to recover arrear payments and/or the guarantee to the conditional sales contract which is the vehicle itself.  <u>Martínez v. Chase Manhattan Bank</u>, 108 D.P.R. 515.

c.  Whether or not the present action is a mixed one which arises from a contractual and also a tort action, in accordance to <u>Ramos Lozada v. Orientalist Rattan Furniture, Inc.</u>, 130 D.P.R. 712.

d.  Whether or not the violation of Mrs. Nancy Isaac civil right occurred irrespectively from the fact of a novation of the original contract or the original contract itself.  This interlocutory argument was addressed by the United States Court of Appeals opinion in this case.  The appellate court stated that neither the novation nor its effects are controlling.  The fact is that Mrs. Nancy Isaac was gravely affected in her physical and mental functions by a collection procedure which arises from the authority granted by the <u>initial contract to the bank</u>.  See clause five of the Conditional Sales Contract, *supra*.

e.  Whether or not the doctrine of malicious prosecution apply to the facts of this case.

## IV. DISCUSSION OF MOTION FOR SUMMARY JUDGMENT STANDARDS

The standard for summary judgment arises under Rule 56 of the Federal Rules of Civil Procedure, and has been refined by numerous cases.  However, the cases of <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324-325 (1986); and <u>Anderson v.</u>

Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986), are the leading cases in this matter. A party which seeks summary judgment must show to the court that there is no genuine issue or fact for trial; and therefore, the summary judgment requested by the moving party can be granted as a matter of law. Santiago Ramos v. Centennial P.R. Wireless Corp., 217 F. 3d. 46, 52; Gilberto Viera Carrasquillo v. United States of America, Opinion dated November 21, 2006, USDC Civil No. 05-1107. The governing principle to grant a summary judgment can be defined as the existence of no factual disagreement and/or law regarding the facts and issues of a case. The courts have pointed out that there must not be any disagreement to a genuine issue of material facts. See Anderson v. Liberty Lobby, Inc., *supra*. The crux to be determined by a court is the definition of genuine issue, and also the concept of material fact. In United States v. One Parcel of Real Property, Etc., 960 F.2d 200, 204 (1st Cir. 1992), these definitions have been related in the following context:

> "'Genuine' issue means that the evidence about the fact is such that a **reasonable jury** could resolve the point in favor of the non-moving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law."

The fact that the moving party files a motion for summary judgment with the corresponding documents and statement of uncontested facts does not grants it the entitlement to summary judgment. The non-moving party, in the instant case the Plaintiff, can challenge said motion for summary judgment by filing, not only

the reply and opposition, but also all the documents that countered the statements submitted by the moving party.  Suarez v. Pueblo International, Inc., 229 F. 3d 49; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248.  In the present case, there is ample evidence to state that there is a genuine issue of material facts, with regard to the controversies presented in the motion.

In its brief for summary judgment, Defendant states erroneously that the contract was never breached by Citibank, N.A.  See page 7, 8, 9, 10, 11, 12, 13, and 14 of Citibank's memorandum.  Plaintiff, in this reply and opposition, has ample evidence which clearly demonstrates that Citibank, N.A., did breach its obligations under said conditional sales contract, when it pursues its collection activities in accordance with the mentioned contract.  On this issue alone, there is present definite, competent evidence to rebut the motion for summary judgment. Maldonado v. Castillo Rodriguez, 23 F. 3d 576.

The Honorable Court must view the entire record in the light most favorable and/or hospitable to Plaintiffs.  Griggs-Ryan v. Smith, 904 F. 2d 112, 115.  The Court must ignore any conclusory allegation or improbable inferences or speculations not supported by evidence.  Medina Muñoz v. R.J. Reynolds Tobacco, Co., 896 F. 2d 5, 8 (1st Circuit, 1990).

In matters of credibility regarding oral testimony, the Honorable Court must resolve the same at a jury trial and not through a motion for summary judgment.  Because in this case there are genuine dispute of material facts between the oral testimony and the key witness for both Plaintiff and Defendant, the

credibility factor of said witnesses are extremely important to the resolution of the present case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242. Evaluating credibility and weighting evidence are functions duly reserved for the trier of fact: the jury. <u>Anderson</u>, *supra*, p. 255. Also in the case, the Honorable Court has to judge the state of mind of a particular witness (regarding issues of motive, intent, knowledge, good faith or bad faith, as well as malice, fraud, conspiracy or consent). Summary judgment is not the proper vehicle to resolve state of mind issues. <u>Hutchinson v. Proxmere</u>, 443 U.S. 111; <u>Seamons v. Sevow</u>, 206 F. 3d. 1021, 1027-1028.

Second, a material fact, which in accordance to Defendant Citibank, N.A., there is not at issue, is the allegation by Citibank that Plaintiffs claim for damage is time-barred. See pages 14, 15, 16, and 17 of the memorandum. Plaintiff opposes said allegation under Articles 1054, 1056, 1057 and 1868 of the Civil Code of P.R., 31 P.R. Laws Ann. § 3018, 3020, 3021 and 5298; for damages and negligence under local contract law can be claimed within a fifteen (15) year period.

Third, and as an alternative issue or material fact, is Defendant's erroneous claim that Plaintiffs' claim for damages arises from the doctrine of malicious prosecution, as established by the Supreme Court of Puerto Rico in <u>Parrilla Baez v. Airport Catering Services</u>, 133 D.P.R. 263; see also, <u>Ayala v. San Juan Racing, Corp.</u>, 112 D.P.R. 804; and <u>Jimenez v. Sanchez</u>, 76 D.P.R. 370. This is argued in Defendant's brief from page 17 to page 23.

Plaintiff Nancy Isaac Burgos has sufficient evidence to challenge these three allegations made by Defendant, which in turn creates a genuine controversy of facts that must be resolved by the trier of facts: **the jury**.  The present case rests primarily on oral and documentary evidence which will prove the following primary factual controversies:

a.   That there was a collection done jointly by Citibank, N.A. and Professional under the aegis of the conditional sales contract between Mrs. Nancy Isaac Burgos and Citibank, specifically clause five.  This clause reads as follows:

> "Under any of the above circumstance, **the Seller may proceed to collect the debt and/or repossess the Equipment with or without a judicial order but in any event in the manner prescribed by he applicable laws.**  In connection with the foregoing, the Seller may require that the Buyer place the equipment at the disposal of the Seller at the place that the Seller designates for him to be able to repossess it.  Once the Seller may resell the equipment at public auction with his consent through the means provided in the applicable laws, the Seller may resell the equipment at public auction or at a private sale, as the case may be, with the notice, if any, required by the applicable laws and we may bid at said sale.  The product of the sale shall be applied in the following order: first, to pay the expenses incurred by the Seller as a result of the repossession and sale of the equipment, including storage, repair, preservation, expenses, costs, and attorneys' fees; second, to liquidate interest accrued but not paid under this Contract; and third, to liquidate any other sum owed under this Contract, including the remainder owed on the amount financed. The surplus, if any, shall be given to you."

b.   This clause grants sufficient authority to institute a collection procedure.

Said contractual authority is amply granted and it must be exercised with

caution, as literally expressed by the clause itself when it states the following:

> "Under any of the above circumstance, the Seller may proceed to collect the debt and/or repossess the Equipment with or without a judicial order **but in any event in the manner prescribed by he applicable laws.**"

c.  If Citibank. N.A. acts contrary to said clause, which grants its authority to collect; it may be liable for breach of contract.  To Plaintiffs said breach of contract is evidenced when Mr. Lopez Camacho carelessly and erroneously told the police authority that Mrs. Nancy Isaac Burgos gave a false address in the Conditional Sales Contract, or worse that she never lived at the given address.

d.  Mr. Lopez Camacho relied on one source, which was never corroborated.  Also, if you file a criminal complaint or institute one, the person who gives the information to the police agent in charge of said complaint must act with sufficient and reasonable diligence to insure that the information trusted to said officer is true and reliable.  Moreover, Mr. Lopez Camacho knew where Mrs. Nancy Isaac Burgos was at all times.  He personally saw Mrs. Isaac Burgos; and also the vehicle on the day they met at Plaza Trujillo.  Therefore, the allegations forwarded to the Police Department that the vehicle was missing as stolen are incorrect and misleading.

e.  Furthermore, when Mrs. Nancy Isaac Burgos made several payments in the offices of Professional Headquarters, she was asked by employees

17

about the vehicle's location, to what she responded that she was driving said vehicle at the time. Citibank, N.A. and Professional knew where the vehicle was at all times. The negligent action consists mainly in Mr. Lopez Camacho's negligent omission in not corroborating a factual expression given by a third party to this case.

f.    This lack of corroboration and/or ratification caused the filing of the criminal complaint on October, 2001, and thereafter, almost four months later, on January 22, 2002, the false detention and arrest of Mrs. Nancy Isaac Burgos.

g.    If Citibank, N.A. and Professional had been more diligent in their collection procedures, the false arrest and/or detainment would have never occurred. Citibank, N.A. and/or Professional, could have easily have asked personally Mrs. Nancy Isaac Burgos her true address, specifically when she personally made in November, 2001 a payment at their offices. This is their great omission and carelessness per se.

## A. CITIBANK CLEARLY DID BREACH ITS OBLIGATIONS UNDER THE CONDITIONAL SALES AGREEMENT

Clause five of the conditional sales agreement grants authority to Citibank, N.A. to act and collect any arrear payments which Mrs. Isaac Burgos would have under said contract. As previously stated, said clause distinctly spells out that said authority is granted under the existing legal system, and that Citibank, N.A. is obligated to act **under the rule of law** and not above the law. If Citibank, N.A.,

had collected in accordance to the rule of law, no breach of contract would have occurred. However, if Citibank, N.A. used illegal, immoral or negligent tactics while trying to collect any arrear payments owed by Mrs. Isaac Burgos, said collection procedures are contrary to the contractual authority stated in the conditional sales contract.

In the present case, Mr. Lopez Camacho negligently filed a criminal complaint using false and uncorroborated evidence submitted by a third party. This third party, unknown to the case, was the person who told Mr. Lopez Camacho that Mrs. Nancy Isaac Burgos never lived in Calle Carmen Hernández #844, Urbanización El Comandante, Río Piedras, Puerto Rico 00924. Mr. Lopez Camacho never corroborated said evidence by asking any other person, or even Plaintiff Mrs. Isaac Burgos. Based on this biased feeble information, which was never corroborated with evidence, Mr. Lopez Camacho proceeded to tell the police authorities that the vehicle was stolen, for the address given to Mr. Lopez Camacho was allegedly false. Mr. Lopez Camacho was negligent also for he could have arrived in a second occasion to Mrs. Isaac Burgos' residence, when said Plaintiff was present. Also, he was negligent when he omitted the fact that he met with Mrs. Nancy Isaac Burgos at the Trujillo Plaza Mall, and he saw that the vehicle driven by Mrs. Isaac Burgos at the time, the Montero that he claims was stolen.

Moreover, he knew where Mrs. Nancy Isaac Burgos was working and that she was a law abiding citizen, corroborated by the nature of her work as a police

19

officer.  Also, he knew constructively that Mrs. Nancy Isaac Burgos made payments at the offices of Professional.  All these facts were known to Mr. Lopez Camacho from the day he placed the criminal complaint in October 14, 2001, until January 22, 2002, when Mrs. Nancy Isaac Burgos was arrested and/or detained. Thus, Mr. Lopez Camacho had the opportunity from October, 2001 to January, 2002, to inform the police about these facts (that is that Mrs. Isaac Burgos was driving the car before his own eyes; that Mrs. Isaac Burgos made payments at Professional Headquarters personally and she was asked about the car; that Mrs. Isaac Burgos met with Mr. Lopez Camacho; and that Mr. Lopez Camacho never went again to see Mrs. Nancy Isaac Burgos at her true address).

Citibank was also aware of the efforts by Mr. Lopez Camacho and of the payments by Mrs. Nancy Isaac Burgos.  This lack of due diligence in collecting arrear payments later on caused the arrest and/or detention of Mrs. Nancy Isaac Burgos.  If Mr. Lopez Camacho had informed these facts to the police, obviously Mrs. Nancy Isaac Burgos would have never been the object of an arrest, nor the depravation of her regulation firearm and personal vehicle.  This is per say the negligent conduct of Mr. Lopez Camacho which arises from the breach of contract.

Citibank, N.A., Professional and Mr. Lopez Camacho, as an agent of both, failed to act in accordance to the rule of law relating to their collection procedures, which are spelled out in the conditional sales contract.  Mr. Lopez Camacho standards of collection are poor and not in accordance with his experience as a

collection's agent of more than twenty (20) years. There was a lack of the required standard of care in the Defendants' collection procedures and the actions by its agent Mr. Lopez Camacho. See <u>Martinez v. Chase Manhattan Bank</u>, *supra*.

### B. PLAINTIFF'S CLAIM FOR DAMAGES IS **NOT** TIME-BARRED; THE CLAIM FOR DAMAGES ARISES AS A CONTRACTUAL TORT (ARTICLES 1054, 1057 AND 1864)

Defendant, in its brief and memorandum, states that the present action falls under Article 1802 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann. §5141; and that it is not a claim which arises from a breach of contract under Article 1054, 31 P.R. Laws Ann. §3018. In their discussion about Plaintiff's claim for damages, Defendant fails to include any discussion under Article 1054. Defendant makes a very conscious effort to avoid its responsibility under breach of contract. Plaintiff relies on Article 1052, 1054, 1057 and 1864 of the Civil Code.

First, Citibank tries to portrait that Mrs. Nancy Isaac Burgos was the only one to breach the contract. This is false, for Defendant Citibank, N.A., really was the one who breached the contract in terms of not acting legally and in its collection proceedings. The contract in its wording limits Citibank's collection activities; and specifically states in the said clause that Citibank was to abide in collecting any funds, in the matter "prescribed" by applicable law.

Second, said contract must be approved by the Commissioner of Financial Institutions. The clause states that Citibank must act in the manner prescribed by applicable law; which has to be construed and/or interpreted as follows:

a. First, very and extremely important, any collection should be done within the framework of Due Process Clause, under the Fifth Amendment of the Constitution of the United States.

b. If collection is made extrajudicially, the procedure cannot demean or humiliate the debtor. Section I of Article II of the Constitution of the Commonwealth of Puerto Rico relative to human dignity. Acevedo v. Western Digital, 140 D.P.R. 452.

c. In consonance with the doctrine established in Martinez v. Chase Manhattan Bank, *supra*, the Court expressed the preoccupation that debt collectors before the approval of the Debt Collection Act, worked with impunity and in an abusive manner and in many occasions they violated the civil rights of a debtor. The Court in its opinion gave a historical perspective of this situation and the need to legislate. See page 523. The constitutional underpinnings for said legislative action resides in Section VIII, Article II of the Constitution of the Commonwealth of Puerto Rico, which grants the right to unwary person against abusive attacks of his honor, reputation and also his private and family life. The debt collector's abusive and violent actions, as it occurred in case of Martinez v. Chase Manhattan Bank, *supra*, where the Plaintiff was subject of physical, as well as mental abuse, constitutes also a violation of Section VIII, Article II. However, Martinez v. Chase Manhattan Bank, *supra*, does not literally express said constitutional violation.

Nevertheless, the Puerto Rico Debt Collection Act has its roots on said constitutional premises.   See also, <u>Alberio Quiñonez v. E.L.A.,</u> 90 D.P.R. 812.

d.   The Defendants must act in accordance to the Federal Debt Collection Practices Act and regulations thereof.  Title 15 U.S.C.A. §1692 *et seq.*; <u>Vázquez-García v. Trans Union de Puerto Rico</u>, 222 F. Supp. 2d. 150.

e.   It must also abide with respect to the Consumer Affairs Department of the Commonwealth of Puerto Rico (DACO) regulatory power in relation to, not only the interpretation of the consumer contract, but its enforcement.  A conditional sales contract is a consumer loan controlled by Defendant.  See 3 P.R. Laws Ann. §341 *et seq*.

f.   If Citibank proceeds to collect by filing a civil complaint, all its actions in said civil suit must be made under due process considerations which emanates from both the Federal and Commonwealth Constitutions; and also, within the Rules of Civil Procedure of Puerto Rico.  For example, Citibank cannot seize a vehicle without having a court order to such effects and must give reasonable time to the debtor to defend himself in any collection.  See Rule 51 of the Rules of Civil Procedure.

g.   A collection is to be instituted with an embargo; Citibank must comply with Rule 56 of the Rules of Civil Procedure.  It must seek a court order and proceed with all the proceedings relating to an embargo, including a hearing.  Rule 56.1 and 56.2 of the Rules of Civil Procedure.

h. If a criminal complaint is filed, the standards for due diligence are stricter, for the person who is charged criminally for any felony, as in this case the vehicle was reported as stolen and/or missing, could suffer and/or be deprived of its liberty. Parrilla v. Baez, 133 D.P.R. 263.

i. In a criminal complaint, the consideration in lost of liberty is an essential element in said procedure. Therefore, great care must be exercised in order to avoid a manifest injustice when pursuing said criminal procedure. If a person gives incorrect or false information to a police officer, and said police officer moves the criminal apparatus and a person is either arrested or put in jail, the person who provides said incorrect information becomes extremely liable. Parrilla v. Baez, *supra*; Ayala v. San Juan Racing, Corp., *supra*.

j. The person who acts as a collection agent must act in accordance to the Law of Collection Agencies. 10 P.R. Laws Ann. §981 *et seq*.

k. Finally, the Defendants must act in accordance to the doctrine of Martinez v. Chase Manhattan Bank, *supra*, specifically in relation to the following part of the opinion: CITAR.

In the present case, Citibank, N.A. started collection procedures using a criminal statute, when it knew that Plaintiff was readily available; for she never hid herself and the vehicle was accessible and was seen by Defendant and/or its agents. Defendant Citibank, N.A. failed to act in accordance to the applicable law. Defendant Citibank, N.A. should have been more careful, and should have verified

Mr. Lopez Camacho's conduct and collection actions.  Furthermore, the applicable law concept must be considered as those actions which are prohibited to Citibank in collection procedure, to name a few:

a.  The Fifth Amendment of our Federal Constitution establishes that "no person can be deprived of life, liberty or property, without due process of law…".  <u>This is part of our applicable laws</u>.

b.  Art. II, Sec. 11 of the Constitution of the Commonwealth of Puerto Rico establishes that "no person should be incarcerated for debt".  <u>This is part of our applicable laws</u>.

c.  Prior to our constitution, debtors where subject to physical abuse by the creditor.  <u>This is **not** part of the present applicable laws</u>.

d.  A creditor may not: *"extract a pound of flesh for a pound of gold.*" – Shakespeare, Merchant of Venice.   <u>This is **not** part of our modern applicable laws</u>.

e.  No creditor in this modern age can subject a person to physical abuse, this includes enslavement.  Amendment 13 of our Federal Constitution.  <u>This is part of our applicable laws</u>.  Prior to said amendment, people where enslaved because of debt.  See also Section 12 of Article II of the Constitution of the Commonwealth of Puerto Rico.

f.  Under the Federal Debt Act, no creditor or debt collector can act with impunity and mentally harass a debtor.  <u>This is part of the applicable laws</u>.

g.  In case of an embargo of the vehicle, we must act in consonance to Rule 56 of the Rules of Civil Procedure, and Citibank, N.A. must act in conformity with the execution and order of a competent Court.  A debt collector must provide for a depository and must act within the instructions of a Marshall.  Also, a debt collector must act in accordance to the Law of Collection Agencies, *supra*.  <u>This is part of the applicable laws</u>.

These are the main legal standards of care that a creditor, in this case Citibank, N.A. and it debt collector, Professional, must abide under the aegis of the contract which again we repeat:  "Any collection procedure must be made in any event in the manner prescribed by applicable law".  Therefore, in light of these considerations, the conditional sales contract is the genesis by which Citibank is empowered to act, in its rightful matter, to collect any arrear funds.  **<u>However, it must act in the matter as prescribed by applicable laws</u>**.

Said clause is not merely a figment of our imagination or an unmeaningful clause, but it is the restraining code that a creditor must exercise in his right to collect any arrear funds; either in the original contract or in novation.  Having addressed this issue, about the genesis of the nature of creditor's right to collect, the same obviously is a direct link to the breach of contract.

Having discussed the etiology of the cause of action which definitely arises from a breach of contract, we must then proceed to analyze if the Plaintiff's case of action is time-barred.

26

In <u>Ramos Lozada v. Orientalist Rattan Furniture, Inc.</u>, 130 D.P.R. 712, the Supreme Court of Puerto Rico resolved that the statute of limitations applicable for damages which arise from both, a contractual and aquiline nature.   In its opinion, the court stated that when damages arise from both, a contractual and a tort action, the Plaintiff has a fifteen (15) year period to file a complaint; and not one year.   If we take the advisement and opinion of the United States Court of Appeals, in which it has definitely stated that the banking activity arises from a contract and specifically from a banking collection practice, the etiology of the claim for damages is simple.   Citibank, N.A. breached the contract by not abiding in a matter prescribed by the applicable laws in its collection activities and therefore, said contract is governed by Article 1054, which grants damages for any breach of contract by Citibank, N.A.   But it is Article 1054 and 1864, 31 P.R. Laws Ann. § 3018 and 5294, which establishes the statute of limitations of fifteen (15) years for a breach of contract.   Furthermore, Citibank, N.A. and its collection agency must abide with the contractual nature of its obligation under clause five of the conditional sales contract.   They must act in their collection activities within the prescribed applicable laws, *supra*.   The contractual nature of our claim is also supported by <u>Martinez v. Chase Manhattan Bank</u>, *supra*.

### C. MALICIOUS PROSECUTION DOCTRINE

Defendant Citibank suggests throughout its brief and memorandum that Plaintiff's cause of action arises from the arrest and/or detention of Mrs. Nancy Isaac Burgos.   This is erroneous, for the contractual cause of action presented by

27

Plaintiff is not the detention of Mrs. Isaac Burgos, but the breach of contract at the time that Citibank and Professional's collections agent, Mr. Lopez Camacho, gave police erroneous information about Mrs. Isaac Burgos and her true residence, without due diligence which includes verifying the correctness of said information.    Various questions can be easily entertained about Citibank's negligent conduct in not verifying the information given:

    a.  If Mr. Lopez Camacho met with Mrs. Nancy Isaac Burgos at Trujillo Plaza and saw her driving the vehicle, the act of going to the police seems unnecessary, for she was always made available.  So we may ask, why a criminal action was commenced under these premises?

    b.  If Mrs. Nancy Isaac Burgos went personally to Professional's headquarters to make payments in November, 2001 and was asked about the vehicle, which she was driving at the time, the criminal charge that the vehicle was stolen lacks a main element:  the vehicle was not absconded.  Why file the criminal complaint and follow through with it?

    c.  If Citibank and Professional knew at all times where the vehicle was when they received funds from Mrs. Nancy Isaac Burgos, why commence with a criminal action by its agent; and thereafter, continue to press charges?

    d.  If Mr. Lopez Camacho had previously visited Mrs. Nancy Isaac Burgos at her place of employment, where he even met her supervisor, why not try to contact her there several times if needed before presenting a

criminal complaint, especially when her employer and supervisor is the **Puerto Rico Police Department**?

e. The opportunity to hide a vehicle, or hide herself is nil, for she is a police officer working within the Police Department for more than twenty years. This is similar to a person who hides himself under the jaws of a predator; no one hides inside the jaws of a wolf. This is contraindicated and/or a contradiction?!

This is not a case of malicious prosecution, but of negligence, dereliction, carelessness and/or omission on the part of Mr. Lopez Camacho, Citibank, N.A., and Professional when they gave erroneous information to the police, in violation of the contractual sales agreement. This erroneous information led to the eventual arrest, detainment and seizure of Nancy Isaac Burgos' regulation firearm and vehicle. The police acted in accordance with the information presented in the criminal complaint, and that information given is erroneous in itself, for there is ample evidence to demonstrate that Mrs. Nancy Isaac Burgos never moved from said place of residence, she was always ever present and readily available. Moreover, the vehicle was never absconded or hidden, for she used the vehicle to go from her place of employment, the Police Department Headquarters, to home and vice versa. Any person with two bits of intelligence could have easily followed Mrs. Nancy Isaac Burgos to her residence.

The trouble is that Mr. Lopez Camacho, Citibank, N.A., and Professional, have cornered themselves to an unattainable position by stating that Mrs. Nancy

Isaac Burgos's residence is not that of <u>Calle Carmen Hernández #844,</u> <u>Urbanización El Comandante, Río Piedras, Puerto Rico 00924.</u>  The information given by Mr. Lopez Camacho to the Police was simply that she never lived there. This information was not given by Mrs. Nancy Isaac Burgos, it was given by a person who is not part of this litigation, for which we have not credible information of his existence.   By just visiting one time the said address, and allegedly hearing from a third party that Mrs. Nancy Isaac Burgos did not live at this address, Mr. Lopez Camacho irresponsibly and naively forwarded this information to both, Citibank, N.A. and Professional, who ordered the filing of a criminal complaint.

In addition, there is not malicious intent; neither from Mrs. Nancy Isaac Burgos or Mr. Lopez Camacho, for both have indicated that there is no animosity, revenge or ill feelings between them.  The fact is that Citibank, Professional and Mr. Lopez Camacho were truly negligent in giving erroneous information to the Police Department, which later caused the detention and/or arrest of Mrs. Nancy Isaac Burgos.  Therefore, the elements of the doctrine of malicious prosecution are not found in this case.

Mr. Lopez Camacho was not diligent or prudent enough when he intervenes with the liberty of a person, when acting as a collections agent.  A collection agent or collection agency must be licensed, and duly informed about all the applicable statutes pertaining to collection. Moreover, a collection agent who acts in an every

day setting must be extremely cautious and avoid situations where the liberty of a person is in jeopardy.

The collections agent can not be neither abusive, nor negligent or act in a grave and erroneous manner as Mr. Lopez Camacho did by informing that the address given, Calle Carmen Hernández #844, Urbanización El Comandante, Río Piedras, Puerto Rico 00924, was not correct. The truth of the matter is that said address is the correct one since 1995. Mr. Lopez Camacho failed in his standard of care in not corroborating and/or obtaining a second source of information. Furthermore, Mr. Lopez Camacho became also extremely negligent when he had before him sufficient information regarding the whereabouts of Plaintiff Mrs. Isaac Burgos, the whereabouts of the vehicle, which he knew, and the fact that Mrs. Nancy Isaac Burgos was paying her debt. With this information, Mr. Lopez Camacho and the Defendants failed to act from October, 2001 to January, 2002 and could have easily told the police that they knew where Mrs. Nancy Isaac was residing; that she had made payments in arrears, and that she had appeared in Professional's main office to pay her debt. Also, Mr. Lopez Camacho had personally seen Mrs. Nancy Isaac Burgos at the Plaza Trujillo Mall with her vehicle.

These true facts about Mrs. Nancy Isaac and her vehicle's whereabouts were never exposed to the police from October, 2001 to January, 2002, by Mr. Lopez Camacho or Citibank. If said information had been given to the police, the charges under Public Law 8 regarding stolen vehicle could have been summaridly

dropped; and therefore, Mrs. Nancy Isaac could have been sparred the mental and physical trauma of her arrest and/or detention which caused her physical and mental suffering, and also the deprivation of the use of her regulation firearm and her vehicle.  Under these facts, contractual negligence is present and therefore Mr. Lopez Camacho's conduct is actionable.  Again, this is not a case of malicious prosecution, but a case of contractual damages under Article 1054 and where both, Citibank and Professional, failed to abide with the rule of law in collection activities and in accordance with the conditional sales contract, *supra*.

If this Court examines the complaint, Plaintiff has never mentioned or made any allusion to the doctrine of malicious prosecution (See Docket #1).  However, Defendant has brought forward this type of tort in a very distorted manner in its *Motion for Summary Judgment*.

### D. PUERTO RICO'S WORKMAN'S COMPENSATION ACT

Under Article 30 of the Workman Compensation Act (11 P.R. Laws Ann. § 31), a person who is a victim of a work related accident caused by a third party may file a civil complaint against said third party claiming civil damages.  The said article also grants a stay in the civil proceedings in filing said civil suit when the aggrieved party is still under treatment before the State Insurance Fund.  This article also states that the worker has one year to file a civil complaint after the State Insurance Fund and/or the Puerto Rico' s Industrial Commission has entered a final decision and said decision becomes firm from all appellable administrative

and judicial purposes.  In the present case, Mrs. Nancy Isaac Burgos qualifies under the stay protection of said article, under the following facts:

    a.  On January 23, 2002, one day after the alleged arrest and/or detention, Mrs. Nancy Isaac Burgos became the target of demeaning conduct caused by her fellow workers when they bothered her in relation to the previous day events.

    b.  On that same day, she was treated by the State Insurance Fund physicians who ordered her to rest, and prescribed her medications and follow-up treatments.

    c.  She was under continuous treatment until May 14, 2002, when she was discharged by the State Insurance Fund; in a decision by said agency which was notified to her.

    d.  Said decision was never appealed and became final as of that date.

    e.  Because of this situation, Mrs. Nancy Isaac Burgos could have filed the civil complaint within a one year period after May 14, 2002.

If we take the alternative posture of the Defendant, that the present cause of action arises under Article 1801 and 1802 of the Civil Code, 31 P.R. Laws Ann. §5141, then Plaintiff could file action until May 14, 2003; one year after being discharged by the State Insurance Fund.  This alternative root could also be used in the same respect to any claim in damages caused by the contractual negligence of Defendants under Article 1054 and 1057, 31 P.R. Laws Ann. § 3018 and §3021. Therefore, if this Court supports the fact that Mrs. Nancy Isaac Burgos was under

medical treatment for almost four months after her arrest, a stay of action of a civil complaint can be reasonable granted in favor of Plaintiffs.

## VI. CONCLUSION

The above discussion plainly establishes that the case at issue is governed by the conditional sales contract and its violation by Citibank and its agents, specifically clause five, *supra*. Therefore, the cause of action has contractual roots and it is not time-barred.

**WHEREFORE**, it is most respectfully requested that the motion for summary judgment filed by Citibank be denied.

**MOST RESPECTFULLY SUBMITTED.**

I HEREBY CERTIFY that on this date, the foregoing motion was electronically filed with the clerk of the Court using the CM/ECF system which will send notification of such filing to: *Felipe Sanabria-Quiñones*, Esq.; *Irene Cordova-Rodriguez*, Esq.; *Nestor Mendez-Gomez*, Esq.; *Carlos C. Alsina-Batista*, Esq.; *Juan J. Vilella-Janeiro*, Esq.; and *Juan C. Limardo-Defendini*, Esq..

In Caguas, Puerto Rico, at this December 15th, 2006.

**s/Rafael A. Oliveras López de Victoria**
**Rafael A. Oliveras López De Victoria**
**Attorney for Plaintiffs**
USDC-PR: 119606
URB. VILLA DEL REY
4G9, CALLE 2, 4TA SECCION
CAGUAS, PUERTO RICO 00727-6704
TEL: (787) 744-8588/ FAX: (787)703-0977
Email: roliveralv@prtc.net